McEleney v Riverview Assets, LLC (2022 NY Slip Op 00227)





McEleney v Riverview Assets, LLC


2022 NY Slip Op 00227


Decided on January 13, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 13, 2022

531821
[*1]Judith McEleney et al., Respondents,
v
Riverview Assets, LLC, et al., Appellants.

Calendar Date:December 16, 2021

Before:Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ.

Law Offices of John Wallace, Albany (Murry S. Brower of counsel), for Riverview Assets, LLC and another, appellants.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Albany (Christopher J. Martin of counsel), for ABM Industry Groups, LLC, appellant.
Buckley, Mendelson, Criscione & Quinn, PC, Albany (John J. Criscione of counsel), for respondents.



Garry, P.J.
Appeal from an order of the Supreme Court (Buchanan, J.), entered July 8, 2020 in Schenectady County, which, among other things, denied defendants' motions for summary judgment dismissing the complaint.
Plaintiff Judith McEleney worked in a building owned by defendant Riverview Assets, LLC, a company affiliated with defendant Hampshire Properties LLC (hereinafter collectively referred to as the owners). Defendant ABM Industry Groups, LLC provided janitorial services for the owners. As she was leaving work one day, McEleney allegedly slipped on water and fell while passing one of ABM's cleaning machines that had been parked in a hallway. That hallway was in an area of the building leased to a tenant — a nonparty to this action — which was required by its lease to clean and maintain its own leased space, and for which ABM did not provide janitorial services.
McEleney and her spouse, derivatively, commenced this action alleging negligence. Following joinder of issue, the owners moved for summary judgment dismissing the portion of the complaint that was against them. ABM also moved for summary judgment dismissing the complaint against it, as well as the owners' cross claims. Plaintiffs cross-moved to amend their bill of particulars. Supreme Court denied the owners' and ABM's motions for summary judgment and granted plaintiffs' cross motion. Defendants appeal.
"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case. Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Whiteside v Stachecki, 180 AD3d 1291, 1292 [2020] [internal quotation marks and citations omitted]). "To determine whether there are any factual issues, [this Court must] view the evidence in a light most favorable to the nonmoving party and give that party the benefit of every favorable inference" (Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1212 [2020] [internal quotation marks and citations omitted]).
"As a general rule, an out-of-possession landlord is not responsible for dangerous conditions existing upon leased premises after possession of the premises has been transferred to the tenant" (Pomeroy v Gelber, 117 AD3d 1161, 1162 [2014] [internal quotation marks and citations omitted]; accord McLaughlin v 22 New Scotland Ave., LLC, 132 AD3d 1190, 1192 [2015]). Additionally, a property owner will generally not be held liable for the negligence of an independent contractor (see Kleeman v Rheingold, 81 NY2d 270, 273 [1993]; Berger v Dykstra, 203 AD2d 754, 754 [1994], lv dismissed and denied 84 NY2d 965 [1994]). However, one exception to both these general rules exists where the owner invites the public to the premises, including to places such as stores and office buildings; in those circumstances, property "owners are charged with a [*2]nondelegable duty to provide members of the general public with a reasonably safe premises, including a safe means of ingress and egress" (Backiel v Citibank, 299 AD2d 504, 507 [2002]; see Wayman v Roy Stanley, Inc., 122 AD3d 1119, 1120 [2014]; Blatt v L'Pogee, Inc., 112 AD3d 869, 869 [2013]; Thomassen v J & K Diner, 152 AD2d 421, 424 [1989], appeal dismissed 76 NY2d 771 [1990]). "New York courts have long imposed a special duty on property owners to keep the entrances and passageways of a public building safe for tenants, their visitors, and their employees, all classes of people who come onto the premises for reasonably foreseeable purposes" (Backiel v Citibank, 299 AD2d at 506). "Clearly it would be inequitable to permit a property owner to escape liability by merely delegating the obligation to repair or maintain the premises to an independent contractor" (id.; see Rosenberg v Equitable Life Assur. Socy. of U.S., 79 NY2d 663, 668 [1992] [noting that such a party "cannot insulate itself from liability by claiming that it was not negligent: (that party) is vicariously liable for the fault of the independent contractor because a legal duty is imposed on it which cannot be delegated"]).
In support of their motion for summary judgment, the owners submitted, among other things, their lease agreement with the tenant, photographs of the area where the accident occurred and the deposition testimonies of McEleney, a representative of the owners and the ABM employee who had been using the floor scrubbing machine and placed it in the area where McEleney fell. At her deposition, McEleney testified that, at the time of the incident, she worked in an office that her employer subleased from the tenant. To reach the elevator that accesses the garage where she parked, she routinely passed through a hallway in the tenant's leased area, then a common hallway. Although her office was locked, none of the hallways were locked or restricted. Before reaching the elevator on the day in question, McEleney fell and was injured in the tenant's hallway. McEleney testified that the floor was wet where she fell and that there was a cleaning machine to her left that was just "parked" there and not being operated by anyone. The liquid she slipped on was water, which had accumulated into a puddle to the right of the machine. According to McEleney, when she located the ABM employee, he allegedly told her that the machine had not been working and that they were trying to get it fixed.
Although the lease required the tenant to clean its leased space, and ABM did not provide cleaning services to the tenant, ABM was responsible for cleaning the common hallway abutting the hall where McEleney fell. The ABM employee had been cleaning that common hallway with the machine and had placed it in the tenant's hallway — which was apparently wider than the common hallway — so that it would be out of the way and not obstruct the common hallway while he took a break. The employee [*3]told his supervisor that McEleney said she had fallen on water from the cleaning machine. The ABM employee testified that he had not seen water on the floor but could not verify the lack of water there; he was also equivocal regarding whether moisture would remain on the floor after using the machine.
McEleney was injured in a hallway leading to the elevators that she routinely used to access the parking garage and exit the building. Even though this part of the building was under the control of the tenant, the area was open to the general public. As McEleney was a person lawfully on the premises, the owners owed her a nondelegable duty to provide a safe means of ingress and egress (see Backiel v Citibank, 299 AD2d at 507). That nondelegable duty gave rise to an exception to the general rules, allowing the owners to be held vicariously liable for the purported negligence of an independent contractor, such as ABM, which allegedly created a dangerous condition that caused McEleney's injuries (see Wayman v Roy Stanley, Inc., 122 AD3d at 1120; Grizzell v JQ Assoc., LLC, 110 AD3d 762, 764 [2013]; Podlaski v Long Is. Paneling Ctr. of Centereach, Inc., 58 AD3d 825, 826 [2009]). As the owners failed to meet their prima facie burden to establish entitlement to summary judgment, Supreme Court properly denied their motion (see Monroy v Lexington Operating Partners, LLC, 179 AD3d 1053, 1054 [2020]).
As to ABM, "[b]ecause a finding of negligence must be based on the breach of a duty, a threshold question in tort cases is whether the alleged tortfeasor owed a duty of care to the injured party" (Espinal v Melville Snow Contrs., 98 NY2d 136, 138 [2002]; accord Vogle v North Country Prop. Mgt., LLC, 170 AD3d 1491, 1492 [2019]). Although a contractual obligation generally does not give rise to tort liability in favor of a noncontracting third party, one exception to this principle applies, and creates a duty of care, "where the contracting party, in failing to exercise reasonable care in the performance of [its] duties, launches a force or instrument of harm" (Espinal v Melville Snow Contrs., 98 NY2d at 140 [internal quotation marks, brackets and citation omitted]; accord Stiver v Good & Fair Carting & Moving, Inc., 9 NY3d 253, 257 [2007]; see Jubie v Emerson Mgt. Enters., LLC, 189 AD3d 2030, 2030 [2020]). "Stated another way, this exception is implicated 'where the promisor, while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk'" (Grady v Hoffman, 63 AD3d 1266, 1267 [2009], quoting Church v Callanan Indus., 99 NY2d 104, 111 [2002]). "Where such a duty is alleged, a defendant contractor moving for summary judgment has the burden of eliminating all material issues of fact, and establishing conclusively[] that it did not launch a force or instrument of harm by negligently creating the dangerous or defective condition complained of" (Bruce v Edgewater Indus. Park, LLC, 169 [*4]AD3d 753, 754 [2019] [citations omitted]).
ABM argues that it was not required to negate any Espinal exception in its motion papers due to plaintiffs' failure to plead one in their amended complaint or bill of particulars (see Turner, v Birchwood on the Green Owners Corp., 171 AD3d 1119, 1121 [2019]). Although plaintiffs did not explicitly identify a specific Espinal exception, their original bill of particulars stated, among other things, that "[i]t will be alleged, that the defendant created the condition in question in that it, and/or its agents or contractors were aware they had a defective piece of equipment that was leaking substance onto the floor and neglected to take appropriate steps to remove the substance." The clear essence of this contention is that ABM launched a force or instrument of harm by allowing the cleaning machine to leak onto the floor, thereby creating a dangerous condition that caused McEleney to slip and injure herself (compare Sampaiolopes v Lopes, 172 AD3d 1128, 1130 [2019]).
Despite ABM's contention that plaintiffs are merely speculating regarding the source of the liquid that caused McEleney to fall, the record contains circumstantial evidence from which a jury could reasonably infer that ABM was negligent and that such negligence caused the accident (see Schneider v Kings Hwy. Hosp. Ctr., 67 NY2d 743, 744 [1986]; Rivera v Waterview Towers, Inc., 181 AD3d 844, 846 [2020]; Brumm v St. Paul's Evangelical Lutheran Church, 143 AD3d 1224, 1227 [2016]; Seelinger v Town of Middletown, 79 AD3d 1227, 1229-1230 [2010]; Grady v Hoffman, 63 AD3d at 1267; see also Arvanete v Green St. Realty, 241 AD2d 909, 910 [1997]). Viewing the facts in the light most favorable to the nonmoving parties, McEleney's testimony establishes that there was a puddle of water next to the cleaning machine and that she slipped on this puddle. Further testimony established that an ABM employee placed the cleaning machine in the hallway, that the machine was malfunctioning, and that failing to properly shut down the machine could have caused water to leak out. The record evidence thus raises questions of fact regarding whether ABM launched the force or instrument of harm while performing its contractual obligations for the owners, requiring denial of ABM's summary judgment motion (see Ramsey v Temco Serv. Indus., Inc., 179 AD3d 726, 727-728 [2020]; George v Marshalls of MA, Inc., 61 AD3d 925, 928-929 [2009]; see also Arvanete v Green St. Realty, 241 AD2d at 910; compare Dapp v Larson, 240 AD2d 918, 919 [1997]).
Finally, plaintiffs' motion for leave to amend their bill of particulars was unnecessary; as the note of issue had not yet been filed, they were entitled by statute to serve an amended bill of particulars without leave of court (see CPLR 3042 [b]; Malek v Village of Depew, 156 AD3d 1412, 1413 [2017]; Vargas v Villa Josefa Realty Corp., 28 AD3d 389, 391 [2006]; Leach v North Shore Univ. Hosp. at Forest Hills, 13 AD3d 415, 416 [2004]). Hence[*5], plaintiffs were properly allowed to serve that amended pleading (see Reitman v St. Francis Hosp., 2 AD3d 429, 430 [2003]).
Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, with costs.